UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALCAZAR CAPITAL PARTNERS COMPANY,<br>Ugland House,<br>South Church Street,<br>George Town, Cayman Islands<br><br>                    Plaintiff,<br><br>         -against-<br><br>KURDISTAN REGIONAL GOVERNMENT OF IRAQ,<br>44001 Erbil<br>Kurdistan Region<br>Iraq<br><br>                    Defendant. | Case No.:_____<br><br>**COMPLAINT** |

Plaintiff Alcazar Capital Partners Company ("**Alcazar**" or "**Plaintiff**") by and through its undersigned counsel, for its Complaint against defendant the Kurdistan Regional Government of Iraq (the "**KRG**"), alleges as follows:

**NATURE OF THE ACTION**

1.      This action is brought pursuant to the Uniform Foreign-Money Judgment Recognition Act of 2021, New York Civil Practice Law and Rules ("**N.Y. CPLR**") § 5300 *et seq.*, and the Foreign Sovereign Immunities Act of 1977, 28 U.S.C. § 1602 *et. seq.* ("**FSIA**") seeking the recognition and enforcement of a final money judgment (the "**Kuwait Judgment**") rendered on April 19, 2022 by the Kuwait Court of Appeal (the "**Court of Appeal**") against the Kurdistan Regional Government of Iraq ("**KRG**").  A true and correct copy of the authenticated Kuwait Judgment, along with a certified translation is annexed as Exhibit A.

2. In 2007, Plaintiff provided a loan of $250 million (the "**Alcazar Loan**") to non-party Korek Telecom Company L.L.C. ("**Korek**"). The Alcazar Loan was for a term of one year with an interest rate of 7% per annum, to be repaid in a single installment on September 1, 2008. Korek required the Alcazar Loan in order to satisfy its obligation to make a royalty payment to the Iraqi Communications and Media Commission (the "**CMC**") in connection with a license Korek obtained from the CMC to install and operate mobile networks in the Kurdistan region of Iraq.

3. As a condition to providing the Alcazar Loan, Alcazar required a loan guarantee from the KRG. Accordingly, in support of the Alcazar Loan, the KRG issued a sovereign guarantee (the "**Guarantee**"), whereby it guaranteed the full and final repayment of the Alcazar Loan. A true and correct copy of the Guarantee is annexed as Exhibit B.

4. Korek failed to make payment on the Alcazar Loan when due. Acting on behalf of Alcazar, Alcazar's parent Agility Public Warehousing Company KSC ("**Agility**")—which had loaned Alcazar the funds needed to make the Alcazar Loan—thereafter made a demand for payment to KRG pursuant to the Guarantee. The KRG made no payment of the amounts due on the Alcazar Loan, and thereby breached its obligations under the Guarantee.

5. Alcazar sued the KRG under the Guarantee in the Kuwaiti Court of First Instance Commercial Circuit (the "**Court of First Instance**") seeking recovery of the principal and accrued interest on the Alcazar Loan.

6. On April 19, 2022, the Court of Appeal rendered a final money judgment against the KRG in favor of Alcazar. The judgment of the Court of Appeal became final, conclusive, and enforceable in Kuwait against the KRG on May 11, 2022.[1]

7. The full amount of the Kuwait Judgment remains outstanding and unpaid.

8. By this action, Alcazar seeks entry of judgment recognizing the Kuwait Judgment and awarding money damages for the amount of the Kuwait Judgment, plus interest.

## THE PARTIES

9. Plaintiff Alcazar Capital Partners Company is a private equity firm regulated by the Dubai Financial Services Authority with its registered offices at Ugland House, South Church Street, George Town, Cayman Islands.

10. Defendant, the KRG, is a political subdivision of the Republic of Iraq, as defined by the Foreign Sovereign Immunities Act (the "**FSIA**"), 28 U.S.C. § 1603(a)-(b), with an address at 44001 Erbil, Kurdistan Region, Iraq. The KRG is the official ruling government of the Kurdish region of Iraq and administers the governorates of Dahuk, Erbil, and As Sulaymaniyah.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1330(a) because the KRG is a political subdivision of Iraq, and Iraq is a foreign state.

12. The Court also has subject-matter jurisdiction over Defendant under Section 1605(a) of the FSIA. The KRG explicitly and unconditionally waived sovereign immunity with respect to the Guarantee. The Guarantee provides, in relevant part, that the KRG: "For the

---

[1] The final judgment and writ of enforcement was corrected by the Court of Appeal on June 30, 2022 to properly reflect the identity of the defendant as it was named in the Kuwaiti complaint. Declaration of Dr. Abdulwahab Sadeq signed on January 7, 2023 ("**Sadeq Decl.**") ¶ 25.

3

purpose of this guarantee, [does] hereby waive [its] right to allege any sovereign immunity that would [] impede upon the enforcement of the guarantee." *See* Exhibit B.

13. Venue in this District is proper pursuant to 28 U.S.C. § 1391(f)(1), as a substantial part of the property that is the subject of this proceeding for recognition and enforcement of a foreign judgment is situated in this District.

## FACTUAL BACKGROUND

### I. The Underlying Dispute

14. The underlying dispute arose out of Plaintiff's $250 million investment in Korek, a telecommunications company based in the Kurdistan region of Iraq.

15. Korek commenced operations in 2000 and initially held a regional mobile telephone license to provide services in the Kurdistan region of Iraq. Since 2007, Agility, the parent of Alcazar, has made a series of investments in Korek—both on its own behalf and through various corporate vehicles, including Alcazar. By July 2011, Agility held an indirect 44% ownership interest in Korek.

16. The transaction that gave rise to the underlying dispute and to the Kuwait Judgment began in August 2007, when Korek received a nationwide mobile telecommunications license from the CMC that required Korek to pay a $1.2 billion fee to the CMC over several installments, including a payment of $250 million due immediately in September 2007. Korek sought external funding to pay the license fee, including from Alcazar.

17. On September 1, 2007, Alcazar and Agility concluded an agreement whereby Agility agreed to loan $250 million to Alcazar for the purpose of enabling Alcazar to loan that amount to Korek.

18.     On September 11, 2007, Alcazar extended to Korek a one-year loan for $250 million, with an interest rate of 7% per annum.

19.     Also on September 11, 2007, as a condition to Alcazar's loan, the KRG issued the Guarantee on behalf of "The Government of Kurdistan in the Republic of Iraq". *See* Exhibit B. In the Guarantee the KRG, "finally and irrevocably, jointly, and severally with Korek Telecom, guarantee towards [Alcazar], until full and final payment of the loan, in principal and interest, by Korek Telecom, the payment of such loan upon [Alcazar's] first demand."

20.     For the purposes of the Guarantee, the KRG expressly "waive[d] [its] right to allege any sovereign immunity that would [] impede upon the enforcement of the guarantee." Exhibit B.

21.     The Guarantee is signed by Dr. Noori Osman Abdul-Rahman, President of the Divan of the Council of Ministers of KRG.  Exhibit B.  The Divan of the Council of Ministers is the equivalent of the Presidential Cabinet in the United States and is comprised of the office staff of the Council of Ministers.  Sadeq Decl. ¶ 12.[2]

22.     Upon the conclusion of the loan agreement, Agility transferred the entire loan amount from its account at the National Bank of Kuwait to the CMC on behalf of Alcazar and for the benefit of Korek.

23.     Korek did not repay the loan when it came due on September 11, 2008.  The full amount of the Alcazar Loan, plus interest, remains outstanding to this day.

24.     The KRG, as guarantor, also refused, and continues to refuse, to repay either the principal or interest of the Alcazar Loan, in violation of the Guarantee.

---

[2] *Council of Ministers*, KURDISTAN REGIONAL GOVERNMENT, https://gov.krd/com-en/#:~:text=The%20council%20coordinates%20inter%2Dministerial,of%20the%20Kurdistan%20Regional%20Government.

## II. The Kuwaiti Legal System

25. Kuwait's courts are organized in three tiers with the Courts of First Instance as the lowest court, the Court of Appeal as an appellate court, and the Court of Cassation as the highest court. Sadeq Decl. ¶ 6. Proceedings in the Kuwait judicial system is governed by the Civil and Commercial Pleadings Law (the "**Pleadings Law**"). Sadeq Decl. ¶ 7. The Pleadings Law provides for procedures compatible with universally accepted notions of due process. Sadeq Decl. ¶ 7. For example, under Kuwaiti law, plaintiffs must have standing to bring claims; courts must serve defendants with process; claims must include statutorily-mandated information in a statement of claims; courts must have personal jurisdiction over a defendant and subject matter jurisdiction over an action; defendants are free to submit motions and defend their cases; and defendants may submit counterclaims. Sadeq Decl. ¶ 7, 13.

26. Generally, litigants have a right to appeal nearly all judgments of the Court of First Instance to the Court of Appeal, which exercises *de novo* review over cases and may review new evidence and legal arguments submitted by the parties. Sadeq Decl. ¶ 9.

27. Default judgments in Kuwait are subject to specific procedural protections under the Pleadings Law. If a defendant fails to appear in a case despite receiving adequate notice and service of the hearing date, the matter is adjourned for a period of time. Sadeq Decl. ¶ 11. Once a case is continued, if a defendant still fails to appear, the Kuwaiti court will assess the merits of the claim and either dismiss or deny the claim, or enter a default judgment in favor of the plaintiff. Sadeq Decl. ¶ 11. In civil matters, a default judgment can be appealed to the Court of Appeal within 30 days of the date of service of the judgment on the defendant. Sadeq Decl. ¶ 11. A petition to the Court of Cassation seeking reversal of a default judgment from the Court of

6

Appeal must be brought within 60 days from the date of service of the Court of Appeal judgment on the defendant.  Sadeq Decl. ¶ 11.

### III.     The Kuwaiti Proceedings

28.     On May 30, 2021, Alcazar commenced proceedings in the Court of First Instance against the KRG and the National Bank of Kuwait to determine the repayment amount of principal and interest due in connection with the Alcazar Loan.  Sadeq Decl. ¶ 12.

29.      The Court of First Instance found it had subject matter jurisdiction over the case pursuant to the Pleadings Law, which empowers the Court of First Instance to hear civil and commercial cases in which the amount at issue is more than *de minimis*.  Sadeq Decl. ¶ 13.

30.     The Court of First Instance also found it had personal jurisdiction over the KRG pursuant to Pleadings Law Article 24(b), which stipulates that the Kuwaiti courts shall have jurisdiction over Claims filed against any foreigner that does not reside in Kuwait "if the case is relating to . . . or relevant to an obligation originated, executed or required to be executed [in Kuwait]."  Sadeq Decl. ¶ 13.

31.     In accordance with Kuwaiti court procedure, on June 2, 2021, Alcazar served the KRG with process of the proceedings.  Sadeq Decl. ¶ 14.  The notice was provided via court bailiff, who served the Statement of Claim on the KRG through hand delivery at the Embassy of the Republic of Iraq in Kuwait (the "**Iraqi Embassy**"), as the official representative of the Republic of Iraq and all its territories and political subdivisions.  The Iraqi Embassy is located at Al-Daiya, Embassies Complex, Block 5, Al-Istiklal Street "Fahaheel, Kuwait City, Kuwait."  Sadeq Decl. ¶ 14. Contemporaneous reports from a Kurdish news publication additionally show the KRG received notification of the Kuwaiti proceedings.  *See infra* footnotes 3, 5.

32. On June 14, 2021, a first hearing before the Court of First Instance took place. The KRG failed to appear and the hearing was adjourned until July 2021. At a hearing on July 12, 2021, the Court of First Instance appointed an expert Mr. Abdullah Nassar Al Haran ("**Mr. Al Haran**")—an expert from the Experts' Department in the Ministry of Justice—to review the case file and corresponding documents, and to hear the statements of both parties to the claim. Sadeq Decl. ¶¶ 8, 15. The Court of First Instance scheduled the hearing before the appointed expert for October 4, 2021. *Id.* ¶ 15.

33. The Experts' Department notified the KRG of the scheduled hearing date through diplomatic channels. Sadeq Decl. ¶ 16. Mr. Al Haran conducted a first hearing on October 4, 2021. The hearing was adjourned to October 18, 2021 because the KRG failed to appear. Sadeq Decl. ¶ 17. At the reconvened hearing on October 18, 2021, the KRG once again failed to appear. Sadeq Decl. ¶ 18. Mr. Al Haran then determined that the suit would be reserved for the issuance of the report and completion of the mandate issued by the Court of First Instance. *Id.*

34. Mr. Al Haran issued a report on October 24, 2021 (the "**Expert Report**") concluding that: (1) Alcazar granted a loan to Korek in the amount of $250 million and, on the same day, the KRG issued the Guarantee in favor of Alcazar, whereby it guaranteed the full and final amount of the loan, including interest at a rate of 7% per annum; (2) the National Bank of Kuwait transferred the loan amount to the CMC for the benefit of Korek; (3) neither the principal nor interest of the loan had been repaid to Alcazar; and (4) the amount due to Alcazar pursuant to the loan and applicable 7% per annum interest rate amounts to $490,077,625.56.[3] Sadeq Decl. ¶ 19.

---

[3] *An affiliate of "Agility" files a case for the assignment of an expert against the government of Iraqi Kurdistan*, Al Rai Media, https://www.alraimedia.com/article/1538040/%D8%A7%D9%82%D8%AA%D8%B5%D8%A7

35. The Expert Report notes that the KRG failed to appear despite the fact that the KRG was duly notified of the suit by Alcazar and was notified of the scheduled hearing date before Mr Al Haran through proper service. Sadeq Decl. ¶ 20. The KRG was also duly notified of the issuance of the Expert Report and the upcoming hearing date at the Court of First Instance on November 22, 2021 by registered mail. *Id.*

36. Further hearings before the Court of First Instance were held on November 22, 2021 and January 3, 2022. The KRG failed to attend either hearing. On January 24, 2022, the Court of First Instance denied Alcazar's claims on the grounds that there was insufficient evidence in the record to confirm that the Alcazar Loan was transferred directly to Korek, which would have triggered the KRG's obligations under the Guarantee. Sadeq Decl. ¶ 21. Specifically, the Court of First Instance took notice of the findings of the Expert Report but found that the amount purportedly loaned by Alcazar was transferred from Agility's account at the National Bank of Kuwait to the CMC and that no evidence had been submitted to show the nexus between Alcazar and Agility, nor that funds were transferred from Korek to the CMC. *Id.*

37. On February 16, 2022, Alcazar appealed the judgment issued by the Court of First Instance to the Court of Appeal. Sadeq Decl. ¶ 22. Agility moved to intervene in the appeal as an interested party with standing. Sadeq Decl. ¶ 23. The Court of Appeal's Department of Clerks served notice of Agility's motion to intervene on the KRG via electronic mail in compliance with Kuwaiti law. Sadeq Decl. ¶ 23. In the appeal record, Alcazar and Agility

%D8%AF/%D8%AA%D8%A7%D8%A8%D8%B9%D8%A9-%D9%84-
%D8%A3%D8%AC%D9%8A%D9%84%D9%8A%D8%AA%D9%8A-
%D8%AA%D9%82%D9%8A%D9%85-%D8%AF%D8%B9%D9%88%D9%89-
%D9%86%D8%AF%D8%A8-%D8%AE%D8%A8%D9%8A%D8%B1-%D8%B6%D8%AF-
%D8%AD%D9%83%D9%88%D9%85%D8%A9-
%D9%83%D8%B1%D8%AF%D8%B3%D8%AA%D8%A7%D9%86-

provided evidence[4] of the agreement between themselves with regards to the funding of the Alcazar Loan, as well as evidence of the transfer made from Agility's National Bank of Kuwait account (on behalf of Alcazar) to the CMC for the benefit of Korek. Sadeq Decl. ¶ 23.

38. On March 22, 2022, a first hearing was held before the Court of Appeal. Despite having received notice, the KRG did not appear, and the Court of Appeal reserved the appeal for judgment on April 19, 2022 to provide further opportunity for the KRG to appear. Sadeq Decl. ¶ 24.. The KRG also failed to appear at the April 19, 2022 hearing where the Court of Appeal issued the Kuwait Judgment.

IV.    **The Kuwait Judgment**

39. On April 19, 2022, the Court of Appeal accepted Alcazar's appeal, approved Agility's intervention and, after considering the record and additional evidence submitted by Alcazar and Agility, rendered the Kuwait Judgment against the KRG in favor of Alcazar in the amount of $490,077,625.56. This amount is comprised of the $250 million in principal due on the Alcazar Loan and unpaid interest from the date of the loan and Guarantee until the filing of the lawsuit on May 31, 2021. The Court of Appeal ordered that interest accrue on the Kuwait Judgment at the contract rate of 7% per annum until complete repayment is made. Exhibit A, Sadeq Decl. ¶ 24.

40. In rendering the Kuwait Judgment, the Court of Appeal expressly found that the KRG issued a Guarantee whereby it undertook to fully and finally repay the loan at the original amount and related interest. Exhibit A, Sadeq Decl. ¶ 24.

---

%D8%A7%D9%84%D8%B9%D8%B1%D8%A7%D9%82 (June 1, 2021, 10:00 pm) (machine translated from Arabic).

[4] The Kuwaiti Court of Appeal exercises *de novo* review of issues of both law and fact. Sadeq Decl. ¶ 9.

41. On May 11, 2022, a writ of enforcement on the Kuwait Judgment was affixed to the Kuwait Judgment making it final, conclusive, and immediately enforceable in Kuwait against the KRG. Exhibit A; Sadeq Decl. ¶ 24. On June 30, 2022, the Court of Appeals corrected the final judgment and writ of enforcement to properly match the defendant as it was named in the complaint ("Kurdistan Regional Government (KRG) – Iraq"). Sadeq Decl. ¶ 25.

42. The Kuwait Judgment (as corrected) was validly served on the KRG through the Kuwaiti Ministry of Foreign Affairs and the Iraqi Embassy on September 26, 2022 . Sadeq Decl. ¶ 26.

43. Moreover, the KRG has actual knowledge of the Kuwait Judgment, as evidenced by local news publications.[5]

44. More than 60 days has passed since service of the Kuwait Judgment on KRG. The KRG has not filed a petition to the Kuwait Court of Cassation requesting the opportunity to further appeal the Kuwait Judgment and the time to do so had now expired. Sadeq Decl. ¶ 26.

45. The KRG has not paid any portion of the Kuwait Judgment to Alcazar. Sadeq Decl. ¶ 28.

---

[5] *A Kuwaiti company reveals a debt of 490 million dollars owed by the Barzani family*, RojNews, https://rojnews.news/ar/%D9%83%D8%B1%D8%AF%D8%B3%D8%AA%D8%A7%D9%86/%D8%B4%D8%B1%D9%83%D8%A9-%D9%83%D9%88%D9%8A%D8%AA%D9%8A%D8%A9-%D8%AA%D9%83%D8%B4%D9%81-%D8%B9%D9%86-%D8%AF%D9%8A%D9%88%D9%86-%D8%A8%D9%82%D9%8A%D9%85%D8%A9-490-%D9%85%D9%84%D9%8A%D9%88%D9%86-%D8%AF/ (Apr. 20, 2022, 4:06:56 PM) (machine translated from Arabic).

**CLAIM FOR RELIEF**
**(To Enforce the Foreign Money Judgment Dated April 19, 2022)**

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 herein.

47. The Kuwait Judgment is a foreign money judgment pursuant to the Uniform Foreign-Country Money Judgments Recognition Act of 2021, N.Y. CPLR § 5300 *et seq.*, and was properly entered by the Kuwait Court of Appeal having sufficient jurisdiction.

48. The Kuwait Judgment is final, conclusive, binding and enforceable against the KRG, a political subdivision of Iraq, under the laws of Kuwait.

49. Plaintiff is entitled to entry of a money judgment recognizing the Kuwait Judgment in the amount of $490,077,625.56 plus costs and interest accruing at 7% per annum from May 30, 2021, with interest continuing to accrue thereafter until paid against the KRG pursuant to N.Y. CPLR § 5300 *et seq.*, and the FSIA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests entry judgment in favor of Plaintiff and against Defendant granting the following relief:

1. recognition and enforcement of the Kuwait Judgment;

2. a money judgment for $490,077,625.56 plus costs and interest accruing at 7% per annum from May 30, 2021, with interest continuing to accrue thereafter until paid;

3. post judgment interest; and

4. such other and further relief as deemed appropriate.

DATED:  January 9, 2023                    Respectfully submitted,

                                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _____
     Dennis H. Hranitzky
     Debra D. O'Gorman
     Laura Santos-Bishop
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     212-849-7000 Main Office Number
     212-849-7100 FAX

     Kristin Tahler
     865 S. Figueroa St., 10th Floor
     Los Angeles, California 90017
     213-443-3000 Main Office Number
     213-443-3100 FAX

     Alex H. Loomis (*Pro hac vice to be filed*)
     111 Huntington Ave, Suite 520
     Boston, MA 02199
     617-712-7100 Main Office Number
     617-712-7200 FAX

     *Counsel for Plaintiff Alcazar Capital Partners Company*