UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALCAZAR CAPITAL PARTNERS COMPANY,

       Plaintiff,

-against-

KURDISTAN REGIONAL GOVERNMENT OF IRAQ,

       Defendant.

23-cv-186 (AS)

ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

  In view of next week's hearing on the parties' pending motions, the Court identifies the following questions, and asks each side (if they are so inclined) to file a letter no longer than five single-spaced pages addressing them. The parties need not restate the positions set out in the briefing if a question has been answered; just cite the page addressing it. The letters should be filed no later than Friday, November 15, 2024, at 5pm.

1. Both sides confirmed in their motion-to-dismiss and summary judgment papers that the discretionary grounds under N.Y. C.P.L.R. § 5304(b)(3), (4), and (5) can be adjudicated one way or the other without further factual development. *See* Dkt. 81 at 21; Dkt. 98 at 15-16. Please confirm that the Court has not misunderstood the parties' positions.
2. The claimant in the ICSID arbitration was Agility, not Alcazar. The plaintiff in the Kuwaiti case was Alcazar, not Agility. What is the significance of this distinction, if any, to the applicability of § 5304(b)(4)?
3. The Kuwaiti judgment enforces the KRG guarantee of the convertible note. However, in paragraph 192 of the ICSID arbitral award, the panel found that: "The evidence set out above makes clear that the Convertible Note was no longer in force following the 2011 Equity Transaction as the Claimant had voluntarily 'exchanged' the Convertible Note for equity in Korek. As such, there is no basis for the Claimant's assertion that the KRG repudiated the KRG Guarantee." Dkt. 82-11 ¶ 192. Does the Kuwaiti judgment conflict with this aspect of the arbitral award? Why or why not?
4. Paragraph 192 (and its related examination of the evidence) was not annulled. *See* Dkt. 82-13 ¶ 207(2). Putting aside whether the award counts as a "judgment," is it "final and conclusive" with respect to the conclusion reached in paragraph 192? Why or why not?
5. Does the denial of relief in the ICSID arbitration—$0 to be paid by the KRG—count as "pecuniary obligations imposed by such an award," which "shall be enforced and . . . given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States"? 22 U.S.C. § 1650a(a).

6. Did Alcazar present the 2011 Equity Transaction to the Kuwaiti court? Did the Kuwaiti court address the impact of that transaction on the enforceability of the convertible note or KRG guarantee?
7. What are the best cases—from New York or any jurisdiction with a law similar to New York's Recognition of Foreign Country Money Judgments Act—either recognizing a default judgment like the Kuwaiti judgment or declining to do so, when the judgment is allegedly in conflict with a decision such as the arbitral award?
8. What is the scope of a Court's "discretion" to decline to enforce a foreign judgment based on one of the discretionary grounds laid out in the statute? Are there any Second Circuit, appellate division, or New York Court of Appeals decisions addressing the scope of a trial court's discretion under this statute?

SO ORDERED.

Dated: November 13, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge