UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALCAZAR CAPITAL PARTNERS COMPANY,<br><br>                    Plaintiff,<br><br>-against-<br><br>KURDISTAN REGIONAL GOVERNMENT OF IRAQ,<br><br>                    Defendant. | 23-cv-186 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

In 2007, plaintiff Alcazar Capital Partners Company loaned $250 million to an Iraqi telecom company named Korek. The loan was secured by a guarantee from the Kurdistan Regional Government of Iraq ("KRG"), the defendant here. For a few years, all was well. So well, in fact, that in 2011 Alcazar converted its loan to equity in Korek and waived the KRG's guarantee. But things soon went off the rails. An Iraqi agency unwound the equity deal but didn't reinstate the loan or guarantee the equity replaced. This left Alcazar with no equity, no loan or guarantee, and out hundreds of millions of dollars. Unsurprisingly, litigation commenced on several fronts, with Alcazar leveling accusations of bribery and governmental corruption. After Alcazar's parent, Agility, lost an arbitration against Iraq in 2021, Alcazar went to Kuwait. There, it secured a default judgment against the KRG for over $490 million, and Alcazar wants to enforce that judgment here in New York.

After Agility's arbitration was reopened, the Court stayed this case. Dkt. 144. Alcazar subsequently moved for reconsideration. Dkt. 149. For the reasons below, the motion for reconsideration is GRANTED IN PART. The Court partially lifts the stay to DENY the KRG's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. All other proceedings, including resolution of the KRG's motion to dismiss under Rule 12(b)(6), remain STAYED pending the completion of the ICSID arbitration.

## BACKGROUND

Alcazar is a private-equity firm headquartered in the Cayman Islands. Dkt. 1 ¶ 9. Its corporate parent is Agility Public Warehousing KSC, a Kuwaiti company. *Id*. ¶ 4; Dkt. 82-11 ¶ 2. In 2007, Alcazar loaned $250 million to Korek Telecom Company L.L.C., an Iraqi telecommunications company. Dkt. 1 ¶¶ 2, 14. Korek needed the money to pay the Iraq Communications and Media Commission ("CMC") in connection with a license Korek had obtained from the CMC to "install and operate mobile networks in the Kurdistan region of Iraq." *Id*. The Kurdistan Regional Government, the defendant in this case, acted as guarantor for the loan. *Id*. ¶ 3. In addition to

guaranteeing the payment of the loan, the KRG "waive[d] [its] right to allege any sovereign immunity that would . . . impede upon the enforcement of the guarantee." Dkt. 1-2 at 3.

In 2011, Alcazar converted its debt into equity in a holding company, Iraq Telecom Limited, which in turn obtained a 44% stake in Korek. Dkt. 82-11 ¶ 55. In connection with this deal, Alcazar and Korek signed a deed of release, which provided that the transaction constituted "full and final settlement of all obligations whatsoever owed" by Korek to Alcazar or its parent Agility. Dkt. 82-8 § 2.1. Alcazar agreed to "waive any and all rights, interests and Claims," including any guarantee, against "any other party arising out of or in connection with or relating to" the 2007 loan. Dkt. 82-8 §§ 1.1, 2.3(b).

Korek was required by the terms of its telecommunications license to seek the CMC's approval for this change in shareholder control. Dkt. 82-11 ¶ 56. Indeed, "approval of the Proposed Transaction by the CMC" was an express condition to closing the 2011 deal. Dkt. 59-4 § 3.1(a). The CMC approved the share transfer, subject to a few conditions. Dkt. 82-11 ¶ 56. But three years later, after finding that Korek had not met those conditions, the CMC declared its earlier approval of the deal "void, null and invalid" and ordered Korek to "revoke and terminate any contracts assigning shares." *Id.* ¶ 68.

This development left Alcazar out $250 million and without any shares in Korek. Alcazar and its parent Agility then turned to litigation. Among other things, Agility filed an arbitration against Iraq under the 2015 Kuwait-Iraq bilateral investment treaty. *Id.* at ¶ 1. Pursuant to the treaty, the arbitration was handled by the International Centre for Settlement of Investment Disputes ("ICSID"). *Id.* In the arbitration, Agility argued that the CMC order voiding the share transfer was unlawful; that unwinding the share transfer without reinstating the convertible note (i.e., the 2007 loan agreement) violated various provisions of the treaty, including its prohibition on expropriation of investments; and that the KRG had violated the treaty by repudiating its guarantee to repay the 2007 loan. *See id.* ¶¶ 98-99, 180.

In 2021, the ICSID tribunal issued its decision, rejecting all of Agility's arguments. *Id.* ¶ 279. As relevant here, the tribunal first determined that it had "no jurisdiction to make a finding on the lawfulness of the CMC order," so it assumed the lawfulness of the order and considered only "whether the manner in which [Iraq] has implemented the" order violated the treaty. *Id.* ¶ 98. Second, the tribunal held that the Iraqi government did not violate the treaty by unwinding only the 2011 share transfer because the CMC lacked authority to compel Korek to reinstate the convertible note (and with it, the KRG's guarantee). *Id.* ¶ 143. And third, the tribunal held that the KRG had not violated the treaty by repudiating the guarantee because the 2007 agreement "was no longer in force following the 2011" transaction. *Id.* ¶ 192.

Three months later in March 2021, Alcazar sued the KRG in Kuwait's Court of First Instance to enforce the guarantee. Dkt. 1 ¶ 28. Alcazar served the KRG through a court bailiff, who hand delivered the complaint to the Embassy of the Republic of Iraq in Kuwait. *Id.* ¶ 31. The KRG, which says that it never received notice of the suit, failed to appear in court. *Id.* ¶ 32. Alcazar's Kuwaiti pleadings did not address the 2011 transaction or the waiver of the KRG's guarantee,

which obviously had been at the forefront of the ICSID proceedings. Alcazar just asked the Kuwaiti court to enforce the 2007 guarantee. *See* Dkt. 1 ¶¶ 34, 36, 40.

The Court of First Instance denied Alcazar's claims because "there was insufficient evidence in the record to confirm that the Alcazar Loan was transferred directly to Korek, which would have triggered the KRG's obligations under the Guarantee." *Id.* ¶ 36. After Alcazar appealed, it submitted additional evidence, and the Kuwaiti Court of Appeal then entered a default judgment against the KRG for $490,077,625.56 (the $250 million loan plus accrued interest). *Id.* ¶¶ 37, 39. The court explained that the suit was "based on the claim that [Alcazar] had granted a loan to the Korek Telecom company in the region of Kurdistan in Iraq on 11 September 2007, for the sum of two hundred fifty million dollars," that the KRG "had drafted a sovereign guarantee in order to guarantee payment of the loan," and that Korek "abstained from paying off the loan, which compelled [Alcazar] to file its claim before the judiciary." Dkt. 1-1 at 4–5. It didn't mention the 2011 transaction or any subsequent events.

In January 2023, Alcazar filed this suit to enforce the judgment under New York's Uniform Foreign Country Money Judgments Act, N.Y. C.P.L.R. §§ 5300 *et seq*. ("UFCMJA"). Two months later, the KRG—which finally appeared on the scene in Kuwait—petitioned that nation's highest court, the Court of Cassation, to set aside the Kuwaiti judgment. Dkt. 65 ¶ 11. The Court of Cassation dismissed the KRG's petition as untimely, without reaching the merits. *Id.* ¶ 13.

Subsequently, the KRG filed a request for the Kuwaiti Court of Appeal to reconsider its default judgment. *Id.* ¶¶ 17–18. This case was stayed while that application was pending. Dkt. 69. Meanwhile, the KRG obtained a declaratory judgment that the guarantee had been extinguished from the Commercial Court of Erbil (located in the Kurdistan Region of Iraq), which enjoined Alcazar from seeking payment on the guarantee. Dkt. 82-18 at 11–12; Dkt. 81 at 17. In July 2024, the Kuwaiti Court of Appeal rejected the KRG's request for reconsideration, and this Court lifted the stay. Dkt. 76.

Simultaneously, in January 2024, a committee of the ICSID partially annulled the arbitral decision (which, as a reminder, was in the KRG's favor). Dkt. 82-13 ¶ 207(1)-(2). The parties are currently moving forward before a new tribunal of the ICSID, which will issue a new decision in due course.

Before this Court, the KRG moved to dismiss this suit for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and for failure to state a claim based on exceptions to the enforcement of judgments under the UFCMJA. (The KRG also initially moved to dismiss for lack of personal jurisdiction, Dkt. 80, but it dropped this point in its briefing.)

At a hearing on the KRG's motion, the Court raised the possibility of a stay given the fact that a new ICSID arbitration was happening. Dkt. 151-1 at 33:17–19. Alcazar's counsel was not aware of his client's position on a stay and did not take a firm position. *Id.* at 34:5–6. Following the hearing, the Court stayed this case pending the outcome of the renewed ICSID proceedings. Dkt. 144.

3

After the Court issued the order, Alcazar moved for the Court to reconsider the stay, arguing that the stay should either be lifted in its entirety or at least with respect to the issue of subject-matter jurisdiction under the FSIA. Dkts. 149, 150. The KRG opposed the motion. Dkt. 158.

## LEGAL STANDARDS

"A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (cleaned up). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1988). "Under the FSIA, a foreign state is presumptively immune from suit." *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 369 (2d Cir. 2006). "However, the FSIA contains several exceptions to this general rule of immunity." *Id.* "The party seeking to establish jurisdiction bears the burden of producing evidence establishing that a specific exception to immunity applies, but the foreign state then bears the ultimate burden of persuasion on this question." *Id.*; *see also Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 204 (2d Cir. 2018) ("Where the plaintiff satisfies its burden that an FSIA exception applies, the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." (cleaned up)).

On a motion to dismiss for lack of jurisdiction under the FSIA, "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). "[H]ow the district court proceeds to resolve the motion to dismiss depends upon whether the motion presents a factual challenge." *Id.* (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (alteration in original)). "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nam v. Permanent Mission of Republic of Korea to United Nations*, 2024 WL 4137986, at *6 (2d Cir. Sept. 11, 2024) (quoting *Robinson*, 269 F.3d at 140). But "[w]hen the defendant has . . . challenged the factual basis of the court's jurisdiction, . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting*, 216 F.3d at 40; *see also Robinson*, 269 F.3d at 140 n.6.

In deciding these motions, the Court relies solely on the complaint and documents that the parties agree that the Court may consider.

## DISCUSSION

### I. The Court reconsiders its decision to stay a ruling on the KRG's immunity under the FSIA

The Court's order staying further proceedings rested in large part on the potential that the renewed ICSID arbitration might resolve many of the issues in this case. Dkt. 144. The Court noted that (1) if Alcazar (through its parent, Agility) prevails, it could moot this case and (2) reviewing a ICSID decision that was final in all respects would allow the Court to avoid parsing a decision that had been partially annulled.

Alcazar has moved for this court to reconsider its stay. Dkt. 149. It argues that this case won't be mooted even if it prevails in the ICSID arbitration, and that any award in its favor would have no bearing on whether the KRG is immune under the FSIA. The KRG opposes the motion, arguing that Alcazar fails to make out the required showing for reconsideration, and that the ICSID arbitration could moot this case. Dkt. 158.

It remains true that the outcome of the ICSID arbitration may moot this case, and at the very least, a final resolution of the arbitration will inform the merits issues raised by the parties here, including the applicability of some of the exceptions to enforcement under the UFCMJA urged by the KRG. On the other hand, the Court agrees with Alcazar that the question of the KRG's immunity under the FSIA raises issues wholly separate from that arbitration. And considering the FSIA question now will avoid the possible situation where the ICSID arbitration concludes, this case isn't clearly moot, the stay is lifted, but then *another stay* is needed for an appeal of this Court's FSIA ruling. *See Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007) (allowing for an immediate appeal of the denial of FSIA immunity under the collateral-order doctrine). The Court therefore partially grants Alcazar's motion to reconsider and proceeds to consider whether the KRG is immune under the FSIA.

### II. The Court has jurisdiction because the KRG expressly waived its immunity to this suit

As noted above, the FSIA provides foreign states immunity "from the jurisdiction of the courts of the United States," subject to a few exceptions. 28 U.S.C. § 1604. One exception applies when "the foreign state has waived its immunity either explicitly or by implication." *Id.* § 1605(a)(1). Generally, courts interpret the FSIA exceptions narrowly. *See Garb v. Republic of Poland*, 440 F.3d 579, 581 (2d Cir. 2006) ("[T]he capacity of United States courts to exercise jurisdiction over plaintiffs' claims hinges on a legal inquiry narrowly circumscribed by statute."); *see also, e.g., Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993) (explaining that the implied waiver provision of § 1605(a) is construed narrowly). But courts can't read in limitations that aren't in the statute's plain text. *See Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 295 (2d Cir. 2009) (rejecting argument that an express waiver must contain reference to the United States because "[a]ny other result would stray from the plain meaning of the statutory language").

The parties agree that the KRG explicitly waived its sovereign immunity when it guaranteed the loan from Alcazar. They disagree solely about whether that waiver is still in effect. The KRG says the 2011 transaction, in which Alcazar exchanged debt for equity in Korek, extinguished the KRG's guarantee, and with it, its waiver of sovereign immunity. Alcazar argues that the KRG's argument raises merits issues that don't go to jurisdiction under the FSIA.

To resolve the jurisdictional question, the Court starts with the text of § 1605(a)(1). The statute says this: a foreign state "shall not be immune" in any case "in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). There is no question that the KRG "explicitly" waived its sovereign immunity.

Moving to withdrawal, the KRG doesn't argue that the 2011 transaction effected a "withdrawal" of the waiver "in accordance with the terms of the waiver." *Id*. That makes sense, because the KRG's waiver didn't say anything about withdrawal. It simply provided that "[f]or the purpose of this guarantee, we do hereby waive our right to allege any sovereign immunity that would . . . impede upon the enforcement of the guarantee." Dkt. 1-2 at 3. In this case, Alcazar is indisputably trying to enforce the guarantee, by way of the Kuwaiti judgment, and the KRG is trying to use its sovereign immunity to "impede" Alcazar's enforcement efforts. The text of § 1605(a)(1) clearly goes Alcazar's way.

The KRG's argument that its waiver of sovereign immunity died on the vine with the guarantee is meritless. If the KRG's argument was instead that the waiver of sovereign immunity was *void*—either at the get-go or through a later rescission—then that would be something to consider. One might reasonably question whether a *void* waiver was ever a waiver at all. *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) ("A void contract is one that produces no legal obligation."); *see also Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 276 (E.D.N.Y. 2012) ("When a contract is rescinded, its 'effect is to declare the contract void from its inception and to . . . restore the parties to status quo.'" (citation omitted)).

And sure enough, all the KRG's cases fit this voidness mold. In *Sequeira v. Republic of Nicaragua*, 815 F. App'x 345 (11th Cir. 2020), for example, the contract purporting to waive Nicaragua's immunity was void because it was forged. *See id.* at 349; *see also Phoenix Consulting, Inc.*, 216 F.3d at 41 (holding that district court should have resolved whether signature on contract containing an express waiver of sovereign immunity was forged). Similarly, in *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081 (9th Cir. 2018), the contract purporting to waive Mexico's immunity was void because the signatory "lacked actual authority to enter the contract." *Id.* at 1093. And in *AerSale 28149 Aviation Ltd. v. MIAT Mongolian Airlines*, the defendant argued that it had rescinded the agreement in which it had waived sovereign immunity. 2017 WL 3049564, at *1 (C.D. Cal. Apr. 10, 2017). Although the court "decline[d] to address the merits question of rescission" at the threshold stage of the litigation, it cautioned that the suit might be dismissed for lack of subject matter jurisdiction "[i]f and when" it determined that the contract had been rescinded. *Id.* One might reconcile these cases with the text of § 1605(a)(1) by saying

6

these are situations where there was simply no waiver of immunity, either because it was void *ab initio*, or voided at some later point in time.

But here, the KRG's argument is different. It concedes that its waiver of sovereign immunity was valid. It doesn't claim that the waiver—or the guarantee that contained the waiver—was either void *ab initio* or later rescinded. Instead, the KRG simply raises an argument about enforceability—that the waiver isn't in effect because the guarantee is unenforceable. But the enforceability of the guarantee is *the* merits question that the parties are fighting about, in several different countries no less.[1] Section 1605(a)(1) doesn't require courts to go down that merits rabbit hole at the jurisdictional stage. The KRG has not cited a single case—nor has the Court found one—suggesting otherwise.

Sure, under the FSIA "merits and jurisdiction will sometimes come intertwined." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 178 (2017). But the statute tells us when that's the case and how to handle it when so. For instance, for the separate expropriation exception to apply, the court must determine whether a property right was "taken in violation of international law." 28 U.S.C. § 1605(a)(3). For the non-discretionary tort exception to apply, the court must determine whether a foreign sovereign has committed a "tortious act." *Id.* § 1605(a)(5).

As relevant to this case, the waiver exception doesn't ask whether an explicit waiver of immunity is contained in an "enforceable contract" or anything of the sort. (If anything, it goes the opposite direction by foreclosing a withdrawal of a waiver except "in accordance with the terms of the waiver.") It simply requires an express waiver of immunity.

At bottom, the jurisdictional question is whether the KRG expressly waived its immunity from suit on Alcazar's efforts to enforce the guarantee. It did. Whether Alcazar can collect on the guarantee is a different question, unrelated to the Court's jurisdiction, which the Court does not address at this juncture.

---

[1] Alcazar and Agility have litigated on numerous fronts to try to recover their investment in Korek, sometimes on their own and sometimes through Iraq Telecom Limited. This includes appealing the CMC order; instituting arbitration against a Lebanese bank that furnished Korek with loans structured to divert money from Iraq Telecom Limited; instituting arbitration under the arbitration rules of the International Chamber of Commerce (ICC) against Korek; instituting the ICSID arbitration; and suing on the guarantee in Kuwait. Dkt. 81 at 7–8; Dkt. 90 at 5–8. "To date," the KRG says, "Agility and Alcazar have filed approximately a dozen cases in multiple different forums against Korek and its Iraqi shareholders, alleging that they stole Agility's investments in Korek through fraud, bribery, and corruption." Dkt. 81 at 7.

## CONCLUSION

Alcazar's motion for reconsideration is GRANTED IN PART. The KRG's motion to dismiss for lack of subject-matter jurisdiction is DENIED. The case otherwise remains STAYED pending final resolution of the ICSID proceeding.

The Clerk is directed to terminate the motion at Dkt. 149.

SO ORDERED.

Dated: November 4, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge